IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Moon Spell, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Nicolas Maciel, and<br><br>Cadversity, LLC,<br><br>Defendants. | Case No.<br><br>JURY DEMANDED |

## COMPLAINT

Plaintiff, Moon Spell, LLC. ("Plaintiff"), by its attorneys, TUTUNJIAN & BITETTO, P.C., for its complaint against Defendant CADVERSITY, LLC ("Cadversity") and Defendant Nicolas Maciel ("Maciel") in his personal capacity (collectively "Defendants"), alleges as follows:

## INTRODUCTION

1. This action is a result of Defendants' breach of a non-disclosure agreement, whereby the Defendants published trade secrets in the form of product design sketches in a public forum.

2. Defendants disclosed these trade secrets with willful disregard for its agreed-to obligation of confidentiality.

3. This action therefore alleges claims for misappropriation of trade secrets in violation of 18 U.S.C. § 1836(b).

4. This action furthermore alleges common law claims of trade secret misappropriation and breach of contract under New York State Law.

5. Plaintiff seeks injunctive relief, damages for loss suffered by the Plaintiff, damages for unjust enrichment of the Defendants, double damages for willful and malicious misappropriation, and attorneys' fees and costs, together with all other appropriate relief that is just and proper.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the federal trade secret misappropriation claims asserted in this action pursuant to 18 U.S.C. § 1836(c), and this Court has supplemental jurisdiction of state-based claims pursuant to 28 U.S.C. §§ 1367(a).

7. Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, a substantial part of the events giving rise to the claims occurred in this judicial district and has caused damages to Plaintiff in this district.

8. Personal jurisdiction exists over Defendants because, upon information and belief, Defendants conduct business nation-wide, including in New York and in this judicial district, directly or through intermediaries, or otherwise availed itself to the privileges and protections of the laws of the State of New York, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

9. Personal jurisdiction further exists over Defendants because, as shown in section XII of the attached Non-Disclosure Agreement (hereinafter "Agreement") (see Exhibit A), the Defendants agreed that the Agreement would be construed under the laws of the State of New York.

## PARTIES

10. Plaintiff Moon Spell, LLC, is a New Yor limited liability company, with a principal place of business at 25-71 34th St., 1st Fl., Astoria, NY 11103.

11. Upon information and belief, Defendant Cadversity, LLC, is a Massachusetts limited liability company with a principal place of business located at 26 Wordsworth St., Apt 2, Boston, MA 02119.

12. Upon information and belief, Defendant Nicolas Maciel is a Massachusetts resident, living at 26 Wordsworth St., Apt 2, Boston, MA 02119.

## FACTUAL BACKGROUND

13. Plaintiff developed a functional and visual design for a hydration backpack product.

14. In developing the design of the hydration backpack product, Plaintiff created documents that include graphical sketches and descriptive material.

15. Plaintiff is the owner of these documents.

16. On February 9, 2023, Plaintiff and Cadversity executed the attached Non-Disclosure Agreement ("Agreement") (Exhibit A). Maciel signed the Agreement on behalf of Cadversity.

17. As a representative of Cadversity, Maciel is bound by the terms of the Agreement.

18. The Agreement protects confidential information, which it defines in section A to include, among other things, trade secrets, product ideas, copyrights and intellectual property, and inventions.

19. In signing the Agreement, the Defendants agreed, among other things, "The Recipient will hold the Confidential Information in confidence and will not disclose the Confidential Information to any person or entity without the prior written consent of the Owner."

20. Under the Agreement, Plaintiff disclosed confidential information to the Defendants.

21. The confidential information included, among other things, electronic copies of sketches of the hydration backpack product and textual material, including visual design elements and written description.

22. The confidential information further included details regarding structural innovations that improve the functioning of the hydration backpack product.

23. On or about March 1, 2023, Plaintiff engaged Cadversity to provide services relating to preparing computer-aided design ("CAD") drawings relating to the hydration backpack product.

24. Plaintiff paid Cadversity $3000 to perform these services, under the understanding that the Agreement would be maintained.

25. On or about March 31st, 2023, Cadversity delivered rendered images of the hydration backpack product to Plaintiff.

26. On or about April 6, 2023, Cadversity sent a contract to Plaintiff proposing further services. Plaintiff declined this offer of further services.

27. On or about June 8, 2023, Cadversity delivered CAD files relating to the hydration backpack product to Plaintiff.

28. On or before June 10, 2023, the Defendants posted a video ("Video") on the social media site Instagram.

29. The Video showed sketches that Plaintiff provided to Defendants, while Maciel narrated a description of the hydration backpack product.

30. Maciel asserted on the Video, among other things, that the hydration backpack product was a "five- to six-figure sellable product."

31. On June 10, 2023, after the Video had been publicly available for an unknown amount of time, Plaintiff contacted the Defendants to notify them of the breach of confidentiality.

32. Although Defendants took down the Video, many people had already viewed it. As of June 10, 2023, the video had received over one thousand "likes" and had received at least one comment expressing interest in Defendants' services.

33. Plaintiff's product design, which had to that point been a secret that Plaintiff took pains to protect, was disclosed to the public by the Video.

34. In publishing Plaintiff's sketches, while under an acknowledged duty to keep them secret, the Defendants did misappropriate Plaintiff's trade secrets.

35. In violating the confidentiality of Plaintiff's confidential information, the Defendants did breach their obligations under the Agreement.

36. As a result of Defendants publication of Plaintiff's trade secrets and breach of the Agreement, the Defendants damaged the value of Plaintiff's hydration backpack product, causing losses to the Plaintiff.

37. Such losses include a reduction in the value of the product, as Plaintiff's first-mover advantage is lost and the field is opened to competitors.

38. The Defendants in the Video asserted that the hydration backpack product is a "five- to six-figure sellable product." This value is substantially diminished after the Video's publication.

39. Such losses further include a reduced ability to obtain funding and financing for the product, as investors will have less motivation to invest in a product that is not secret.

40. Such losses further include a limitation on Plaintiff's intellectual property rights. While United States patent law provides a safe harbor for inventors against publications that derive from an inventor's own disclosures, the patent laws of other nations make no such provision.

41. Further, Plaintiff's patent rights under United States law are now under a deadline that is imposed by the Defendants' disclosure under 35 U.S.C. § 102(b).

42. As a result of Defendants' publication of Plaintiff's trade secrets, the Defendants were unjustly enriched.

43. Such unjust enrichment includes the promotional value of the Video, which the Defendants published for the apparent purpose of advertising their services.

44. Such unjust enrichment includes any business and profits derived from the publication of the Video.

45. Upon information and belief, Cadversity is operated predominately by Maciel.

46. Maciel negotiated with Plaintiff and signed the Agreement.

47. Maciel is named as the Manager of the Defendant in the Defendant's corporate formation documents (Exhibit B).

48. Maciel appeared personally in the Video, and in other videos published by Cadversity.

49. Plaintiff did not interact with any other party purporting to represent Cadversity.

50. Upon information and belief, Maciel exercised complete domination over Cadversity in respect to the Agreement and the publication of the Video.

51. Such domination was used to commit a wrong against the Plaintiff in the publication of the Video, resulting in the aforesaid damages to the Plaintiff.

52. Upon information and belief, in performing these acts, there was a unity of interest and control between Maciel and Cadversity such that they are indistinguishable. Cadversity is a mere alter ego of Maciel.

53. Maciel abused the privilege of doing business in the corporate form and should be personally liable for the damages caused by his actions.

54. In committing these acts, Defendants have, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: misappropriated Plaintiff's trade secrets and violated the Agreement.

55. Defendants have shown a willingness to breach the Agreement already, and are poised to do so again at any time.

56. Unless enjoined, Defendants may continue to cause irreparable harm to Plaintiff.

## COUNT I
## FEDERAL TRADE SECRET MISAPPROPRIATION
## (18 U.S.C. §1836)

57. Plaintiff repeats, re-alleges and re-asserts the foregoing paragraphs above as if fully set forth herein.

58. The confidential information that the Plaintiff provided to the Defendants included product design sketches and textual information describing a novel hydration backpack product and an associated visual design.

59. The Plaintiff took measures to keep this confidential information a secret.

60. Such measures include divulging the confidential information only when necessary to further its development to a commercially valuable product, and then only under a non-disclosure agreement such as the Agreement.

61. The confidential information had independent economic value, in that it presented a novel visual design and features that were not available in the marketplace, but which could be readily replicated by others to whom the confidential information became known.

62. The Defendants were entrusted with the confidential information, under the obligations of secrecy imposed by the Agreement. The Defendants thus acquired the confidential information under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret.

63. The Defendants disclosed the confidential information without the consent of the Plaintiff.

64. The Defendants are therefore liable under 18 U.S.C. § 1836(b) for misappropriation of trade secrets.

65. In view of the Defendants' explicit agreement to maintain the secrecy of the confidential information, Defendants' conduct can only be described as willful and malicious, justifying double damages under 18 U.S.C. § 1836(b)(3)(C).

66. Furthermore, Defendants' willful and malicious misappropriation justifies an award of reasonable attorney fees to the Plaintiff under 18 U.S.C. § 1836(b)(3)(D).

## COUNT II
## TRADE SECRET MISAPPROPRIATION
### (New York Common Law)

67. Plaintiff repeats, re-alleges and re-asserts the foregoing paragraphs above as if fully set forth herein.

68. New York common law establishes the tort of trade secret misappropriation. New York courts generally recognize the definition for a trade secret from section 757 of the Restatement of Torts: "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, <u>a pattern for a machine or other device</u>, or a list of customers." (emphasis added).

69. The confidential information therefore qualifies as a trade secret under New York common law.

70. Defendants' publication of the Video was a breach of confidence reposed in it by the Plaintiff in disclosing the confidential information.

71. Defendants acquired the confidential information through a relationship of trust and, by its flagrant and egregious violation of that trust, caused significant harm to the Plaintiff.

72. Defendants therefore misappropriated Plaintiff's trade secrets under New York common law.

73. Defendants' misappropriation of Plaintiff's trade secrets was so flagrant and egregious as to represent exceptional circumstances, justifying punitive damages.

## COUNT III
## BREACH OF CONTRACT
### (New York Common Law)

74. Plaintiff repeats, re-alleges and re-asserts the foregoing paragraphs above as if fully set forth herein.

75. Plaintiff and Defendants willingly executed the Agreement on February 9, 2023.

76. The Agreement deals with services and intangible material, thereby putting it in the realm of New York common law.

77. The Plaintiff agreed to supply confidential information to the Defendants.

78. Plaintiff did supply such confidential information.

79. The Defendants agreed that Defendants would hold the confidential information in confidence and would not disclose the confidential information without Plaintiff's prior written consent. Defendants breached that obligation on or before June 10, 2023.

80. As a direct result of the Defendants' breach of the Agreement, Plaintiff has suffered direct and consequential damages, as described above.

81. Maciel negotiated and signed the Agreement on behalf of Cadversity and also personally presented information in the Video. Maciel's continuous involvement shows that the breach was knowing, willful, and done in bad faith.

82. Defendants therefore breached the Agreement with the Plaintiff

83. The damages described above, including direct and consequential damages, are all natural and probable consequences of Defendants' breach.

84. Section X of the Agreement further specifies, "In any legal action between the parties concerning this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs."

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment be entered against Defendants as follows:

85. An award of $3000 to compensate Plaintiff for the amount spent in engaging Defendants' services under the understanding that the Agreement would apply to any confidential information;

86. An award of $100,000 to compensate Plaintiff for the diminution in value of the hydration backpack product, asserted by Maciel in the Video as being a "five- to six-figure sellable product";

87. An award of damages, to be determined at trial, arising from Defendants' misappropriation of Plaintiff's trade secrets, including losses to Plaintiff and unjust enrichment to Defendants under 18 U.S.C. § 1836(b)(3)(B);

88. An award of double damages for willful and malicious misappropriation of Plaintiff's trade secrets under 18 U.S.C. § 1836(b)(3)(C);

89. An award of reasonable attorney fees under 18 U.S.C. § 1836(b)(3)(D);

90. An award of damages, to be determined at trial, arising from Defendants' misappropriation of Plaintiff's trade secrets, including Plaintiff's losses and Defendants' profits arising therefrom, under New York common law;

91. An award of damages, to be determined at trial, arising from Defendants' breach of the Agreement, including direct and consequential damages to the Plaintiff, under New York common law;

92. An award of attorney fees under the provisions of section X of the Agreement;

93. A permanent injunction against the Defendants' future disclosure of Plaintiff's confidential information;

94. A finding that the Maciel used the Cadversity as an alter ego, in such an egregious way as to justify piercing the corporate veil, rendering Maciel and Cadversity jointly and severally liable;

95. Prejudgment and post-judgment interest on the damages awarded; and

96. Any further relief this Court deems just, necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury in this action pursuant to Fed. R. Civ. P. 38.

Dated this 31st day of July, 2023.

TUTUNJIAN & BITETTO, P.C.

By: /s/ Edward P. Ryan
Edward P. Ryan, Esq. (ER6661)
401 Broadhollow Road, Suite 402
Melville, New York 11747
Tel: (631) 844-0080
Fax: (631) 844-0081
Email: edr@tb-iplaw.com

*Attorney for Moon Spell, LLC*